IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 10-cv-01530-LTB

NOEL KING,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

_____

ORDER
_____

Plaintiff Noel King appeals Defendant's (the "Commissioner") final administrative decision denying his claim for disability benefits security income under Titles II and XVI of the Social Security Act (the "Act").  Jurisdiction in this appeal is proper pursuant to 42 U.S.C. § 405(g).  Oral argument would not materially assist in the determination of this appeal.  After consideration of the briefs and the record, I affirm the Commissioner's decision in part; reverse it in part; and remand the case for further proceedings consistent with this Order.

**I.  Statement of the Case**

Plaintiff applied for benefits under the Act in July of 2006.  Following the initial denial of benefits, a hearing was held before an administrative law judge (the "ALJ").  On August 1, 2008, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act.  The Appeals Council denied Plaintiff's request for review thereby rendering the ALJ's August 1, 2008 decision the Commissioner's final decision for purposes of my review.  Plaintiff timely filed this appeal seeking review of the Commissioner's final decision.

## II.  Statement of Facts

### A.  Background

Plaintiff was born in 1982.  Administrative Record ("AR") 104.  Plaintiff completed some high school and states that he was in special education classes.  AR 113 & 263.  Plaintiff worked in the past as a bellman, dishwasher, fast food worker, and furniture mover.  AR 110 & 135.  Plaintiff last worked as a cook for three months in 2007 but states that he had difficulties understanding directions and getting along with his co-workers in that position.  AR 37 & 38. Plaintiff alleges that he became disabled on June 16, 2006 as a result of back problems, headaches, and a learning disability.  AR 104 & 109.

Plaintiff's was treated for work-related back injuries in 2002 and 2004.  AR 156-67 & 168-75.  In September of 2005, an MRI of Plaintiff's lumbar spine showed "minimal to mild degenerative changes."  AR 228.

In July of 2006, approximately one month after Plaintiff's alleged onset of disability date, Plaintiff was seen by Timothy Sandell, M.D., for complaints of low back pain and headaches. AR 236-39.  On exam, Dr. Sandell found Plaintiff to be in no acute distress with no obvious spinal misalignment.  AR 238.  Upon palpation, Dr. Sandell noted diffuse tenderness in Plaintiff's paraspinal muscles and buttocks.  *Id.*  Dr. Sandell observed that Plaintiff had good motor strength and normal mobility and assessed Plaintiff with chronic lumbar pain with secondary thoracic and lumbar myofascial pain and headaches.  *Id.*  Dr. Sandell prescribed physical therapy, anti-inflammatory medication, and pain medication to Plaintiff.  *Id.*

In October of 2006, Brad Marten, Psy.D., performed a consultative psychological examination of Plaintiff in conjunction with his application for disability benefits.  AR 262-69.

On examination, Dr. Marten reported that Plaintiff displayed essentially appropriate behavior; a mildly anxious mood with an irritable affect; clear, concise, and logical speech; and organized and clear thought processes though with apparent suspicious preoccupation.  AR 265.  Dr. Marten administered the Welscher Adult Intelligence Scale - Third Edition on which Plaintiff received a verbal IQ score of 77, a performance IQ score of 69, and full scale IQ of 71.  AR 267. Dr. Marten noted that these scores placed Plaintiff "at the low end of the borderline range of intellectual functioning at this time."  *Id.*  Dr. Marten diagnosed Plaintiff with a major depressive disorder, single episode, moderate; an anxiety disorder; cannabis abuse; a mathematics disorder; possible alcohol abuse, bipolar disorder, and attention deficit hyperactivity disorder; personality disorder; and a GAF of 50.  AR 268.

James Dyde, M.D., reviewed the evidence and concluded that Plaintiff 's mental condition did not meet or equal the requirements of a listed impairment including listing 12.05. A R 281, 282, 285.  Dr. Dyde assessed Plaintiff with moderate limitations in the ability to understand, remember, and carry out detailed instructions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and interact appropriately with the general public.  AR 292-93.  Dr. Dyde found that Plaintiff was not significantly limited in all other rated areas of mental functioning.  *Id.*  Dr. Dyde concluded that Plaintiff could maintain a normal workday or workweek and perform at a consistent pace without an unreasonable number and length of rest periods if he was limited to work that does not require more than simple instructions, ordinary routines, and simple work decisions.  AR 294.

In August and September of 2007, Plaintiff was treated by Mickey Vargas, Ph.D.  AR

3

318-23.  Dr. Vargas assessed Plaintiff with major depression, single episode, severe and without

psychotic features; anxiety and personality disorders, not otherwise specified; possible cannabis

abuse, attention deficit disorder, bipolar disorder, and schizophrenia disorder; and a GAF score

of 50.  AR 319-20.  Dr. Vargas noted that "issues of commitment to therapy, dishonesty, and no

true alliance made it difficult to work with [Plaintiff]" and that Plaintiff should look for a higher

level of care elsewhere.  AR 321.

In December of 2007, Plaintiff sought treatment at Pikes Peak Mental Health Center.  AR

324-53.  At that time, Yvonne Clark, a Pikes Peak clinician, found Plaintiff to be fully alert and

oriented and with grossly intact memory, normal affect and speech, logical and goal-directed

thought content/perceptions, cooperative behavior, a sad mood, limited judgment and insight.

AR 336 & 351.  Ms. Clark estimated Plaintiff's intelligence to be average and concluded that

follow-up was 'not indicated." *Id.*  Also at this time, David Scola, M.D./D.O., an examining

psychiatrist at Pikes Peak, found Plaintiff to be alert and oriented with goal-directed and

appropriate speech, intact reality testing, fair insight and judgment, an anxious affect, and a

depressed mood.  AR 329. Dr. Scola assessed Plaintiff with chronic pain syndrome; a bipolar

disorder, not otherwise specified; and a GAF score of 62.  *Id.*  After adjusting Plaintiff's

medications, Dr. Scola noted that Plaintiff's affect was brighter, he was more motivated and

optimistic about the future, and he was sleeping better.  AR 327.

In May of 2008, Ms. Clark completed a functional capacity evaluation (mental) of

Plaintiff.  AR 355-56.  Ms. Clark opined that Plaintiff had no limitations in his ability to

maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness

and that he had only slight limitations in the ability to carry out short and simple instructions,

4

interact appropriately with the general public, ask simple questions or request assistance, and set realistic goals or make plans independently of others. *Id.* Ms. Clark opined that Plaintiff had moderate limitations in the ability to remember locations and work-like procedures, understand and remember short and simple instructions, make simple work-related decisions, and get along with co-workers or peers. *Id.* Ms. Clark also opined that Plaintiff had marked limitations in the ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with or in proximity to others without being distracted by them, and accept instructions and respond appropriately to criticism from supervisors. *Id.* Ms. Clark did not offer an opinion on Plaintiff's ability to perform specific work-related mental activities on a sustained basis and instead recommended a vocational assessment. AR 356.

**B. Plaintiff's Disability Hearing**

At the hearing May 20, 2008 hearing, Plaintiff testified that he was only able to lift 20 pounds due to upper and lower back pain and that he suffered from depression, anxiety, paranoid thoughts, and panic attacks. AR 38-9. Plaintiff testified that he had not abused alcohol or drugs in years but acknowledged that he had provided conflicting testimony to Dr. Marten and that he had recently smoked marijuana. AR 40, 42-3.

The ALJ asked Nora Dunne, a vocational expert, if an individual of the same age and educational background as Plaintiff with non-exertional limitations of no complex tasks defined as an SVP level of two or less and GEDs of one or two; limited to simple, repetitive tasks; no dealing with the general public; and minimal supervision could perform Plaintiff's past work. AR 47. The VE responded that such an individual could not perform Plaintiff's past work. *Id.*

The VE further testified, however, that such an individual could work as a small products assembler, a garment hanger, and a parking lot attendant.  *Id.*

The ALJ then asked the VE  if an individual with the same non-exertional limitations as the previous hypothetical who was unable, on an unpredictable basis, to focus on-task and complete the task within the expected period of time would be able to sustain employment.  AR 48.  The VE responded that such an individual would not be able to sustain employment.  *Id.*

In follow-up questioning, Plaintiff's attorney asked the VE if there was any competitive employment that an individual with a marked limitation in the ability to maintain attention and concentration for extended periods, a marked limitation in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; a marked limitation in the ability to work in coordination or in proximity to others without being distracted by them; and a marked limitation in the ability to accept instructions and respond appropriately to criticism from supervisors could perform.  AR 48.  The VE responsed that there was not any competitive employment for such an individual.  *Id.*

**C.  The ALJ's Decision**

In his ruling, the ALJ applied the five-step sequential process outlined in 20 C.F.R. § 416.920(a).  At the first step of the sequential process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 16, 2006.  AR 25.  At the second step, the ALJ determined that Plaintiff had severe impairments of borderline intellectual functioning, depression, and mild degenerative changes of the lumbar spine.  *Id.*  At the third step, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404,

6

Subpart P, Appendix 1.  *Id.*

At the fourth step of the sequential process, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to physically perform a full range of unskilled light work, "*e.g.*, SVP of 2 or less and GED levels of 1 and 2 only," that required no dealing with the general public and minimal interaction with supervisors.  AR 26.  After concluding that Plaintiff is unable to perform any past relevant work (AR 30), the ALJ proceeded to the fifth step of the sequential process and concluded that there were a significant number of jobs in the national economy that Plaintiff was capable of performing based on the VE's testimony.  AR 30-1.

### III.  Standard of Review

In reviewing the Commissioner's decision,  I must determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1992); *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Hamilton, supra,* 961 F.2d at 1498.  I "may neither reweigh the evidence nor substitute [my] discretion for that of the Administrative Law Judge."  *Kelley v. Chater,* 62 F.3d 335, 337 (10th Cir. 1995).  Where evidence as a whole can support either the Commissioner's decision or an award of benefits, the Commissioner's decision must be affirmed.  *See Ellison v. Sullivan,* 99 F.2d 534, 536 (10th Cir. 1990).

### IV.  Analysis

Plaintiff raises three issues on appeal: (1) whether the ALJ's conclusion that Plaintiff did not meet the criteria of Listing 12.05 was supported by substantial evidence in the record; (2)

whether the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence in the record; and (3) whether the Commissioner failed to meet his burden at proof at step 5 of the sequential process.

## A.  The ALJ's Consideration of Listing 12.05

"For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.' *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*  The burden of establishing disability under the Listings is on the claimant. *See Lax v. Astrue*, 561 F.3d 1080, 1085 (10th Cir. 2007) ("... a claimant must provide specific clinical findings that support each of the various requisite criteria for the impairment.").

"In order to satisfy listing 12.05, a claimant must meet the requirements of that listing's capsule definition as well as one of the four severity prongs for mental retardation as listed in the regulations." *Wall v. Astrue,* 561 F.3d 1048, 1062 (10th Cir. 2009) (ellipsis, brackets, and internal quotations omitted).  The capsule definition for Listing 12.05 states that "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22." *Id.*  (quoting 20 C.F.R. CH. III, Pt. 404, Subpt. P., Appx 1).  At issue here, severity prong (C) of Listing 12.05 requires a showing of "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. (internal quotation marks omitted).  Plaintiff therefore had to show that his impairment met or equaled the capsule definition of mental retardation; that he had a valid IQ

score of 70 or below; and that he had another severe impairment.

The Commissioner acknowledges that Plaintiff's performance IQ score of 69 and severe impairments satisfied the two criteria in severity prong (C) of Listing 12.05.  The issue then is whether there was substantial evidence in the record to support a finding that Plaintiff did not meet the capsule definition of mental retardation which requires "significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)."  See Listing 12.05.

To support his finding that Plaintiff did not meet the criteria of Listing 12.05, the ALJ cited Plaintiff's past employment history; the fact that Plaintiff's performance IQ score of 69 was in the borderline range of meeting the criteria of subsection (C); and Plaintiff's higher adaptive functioning.  AR 29.  Plaintiff's work history prior to his alleged onset date was a proper factor to consider with respect to the criteria in the capsule definition of Listing 12.05 and supports the ALJ's finding that Plaintiff did not have significant deficits in adaptive functioning.  *See Crane v. Astrue,* 369 Fed. Appx. 915, 921 (10th Cir. 2010) (ALJ's failure to discuss Listing 12.05 was understandable in light of the facts that Plaintiff had a GED and steady work history).  The evidence that Plaintiff cites to contradict the ALJ's finding regarding his adaptive functioning are statements from Plaintiff himself, whom the ALJ reasonably found "has repeatedly been untruthful and has no credibility."  AR 30.  Other substantial evidence, including the lack of any diagnosis of mental retardation by any medical source, further supports a finding that Plaintiff did not fall within the capsule definition of mental retardation, and the ALJ thereefore did not err in concluding that Plaintiff did not meet or equal the criteria of Listing 12.05.

**B. The ALJ's Assessment of Plaintiff's RFC**

"[T]he ALJ, not a physician, is charged with determining a claimant's residual functional capacity from the medical record." *Howard v. Barnhart,* 379 F.3d 945, 949 (10th Cir. 2004). The ALJ's determination of a claimant's RFC, however, must be supported by substantial evidence in the record. *Castellano,* 26 F.3d at 1028.

Plaintiff first argues that the ALJ's RFC determination is not sufficient enough to allow for meaningful review because he did not specify the weight he gave to the opinions of Drs. Dyde and Marten. I disagree. Consistent with SSR 96-8p, the ALJ's decision included a narrative discussion of all the evidence he considered in determining Plaintiff's RFC including the opinions of Drs. Dyde and Marten. AR 26-30. Furthermore, the RFC that the ALJ assessed for Plaintiff was largely consistent with the opinions of Drs. Dyde and Marten, demonstrating that the ALJ attached some weight to these opinions which are not contradicted by other reliable evidence in the record. The ALJ's failure to specifically include all of the moderate limitations assessed by Dr. Dyde is not error because of the limited weight generally accorded to non-examining medical source opinions and the ALJ's ultimate responsibility to assess a claimant's RFC in light of the record as a whole.

Plaintiff also argues that the ALJ's finding that Plaintiff was capable of performing work requiring a GED reasoning level of 2 is unsupported by evidence in the record. A GED reasoning level of 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved  written or oral instructions" and '[d]eal with problems involving a few concrete variables in or from standardized situations." *Dictionary of Occupational Titles* (4th ed. 1991) ("*DOT*"), Appx. C.  By comparison, a GED reasoning level of 1 requires the ability to

"[a]pply common sense understanding to carry out simple one -or-two step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.*

The Commissioner responds that Plaintiff's argument is misplaced since the ALJ concluded that Plaintiff was limited to unskilled work which by definition is work "which needs little or no judgment to do simple duties that can be learned on the job in a short period of time," 20 C.F.R. 404.1568(a), the basic demands of which include the ability to understand, carry out, and remember simple instructions. SSR 85-15. The problem, however, is that the ALJ's inclusion of work with a GED level of 2 in his RFC assessment for Plaintiff is inconsistent with an ability to only understand, carry out, and remember simple instructions. This problem is compounded by the fact that the ALJ's questions to the VE assumed that Plaintiff could perform work with GED levels of 2, and two of the three jobs the VE testified Plaintiff was capable of performing - small products assembler and parking lot attendant - require a GED reasoning level of 2. *See DOT* #s 706.684-022 & 915.473-010.

I agree that the ALJ's finding that Plaintiff was capable of performing at a GED reasoning level of 2 is unsupported by substantial evidence in the record. In fact, the opinions of Dr. Dyde and Plaintiff's IQ scores contradict this finding. On remand then, The ALJ should revise the RFC he assessed for Plaintiff to omit a capability to perform work requiring a GED reasoning level of 2 and then determine, with input form the VE, if there are still jobs existing in significant numbers in the national economy that Plaintiff is capable of performing.

**C.  Step 5 of the Sequential Process**

I have already determined that further consideration of the fifth step of the sequential

process is required on remand as set forth above.  Plaintiff further argues that the ALJ erred at this step by finding that Plaintiff was capable of working as a parking lot attendant because this job requires contact with the general public, *see* DOT # 915.473-010, and is therefore at odds with the RFC he assessed for him.  The Commissioner concedes this point but argues that this error is harmless because of the other two jobs identified.  As set forth above, however, both the jobs of parking lot attendant and small products assembler require an GED reasoning level of 2, and the evidence in the record does not support a finding that Plaintiff is capable of performing at this level.

Unless the VE identifies additional jobs that a person with Plaintiff's RFC is capable of performing on remand, the ALJ is left with evidence that Plaintiff could work as a garment hanger with 810 jobs existing in Colorado and 110,000 jobs existing in th national economy.  AR 31.  On remand, the ALJ must use common sense to determine whether this, plus any additional jobs identified by the VE, is sufficient evidence that there are significant jobs that Plaintiff is capable of performing considering Plaintiff's level of disability; the reliability of the VE's testimony; the distance Plaintiff is capable of traveling to engage in the assigned work; the isolated nature of the jobs; and the types and availability of such work.  *Trimiar v. Sullivan,* 966 F.2d 1326, 1330 (10th Cir. 1992).

Plaintiff also argues that the ALJ erred in failing to ask the VE whether her testimony was consistent with the DOT.  Although the ALJ should have made such inquiry, *see Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir. 1991), Plaintiff has failed to identify any conflict between the VE's testimony and the *DOT*.  In the absence of such a conflict, the ALJ's error in failing to ask the VE whether her testimony was consistent with the *DOT* was harmless.  *See Poppa v.*

*Astrue,* 569 F.3d 1167, 1174 (10th Cir. 2009) ("Because there were no conflicts between the VE's testimony and the *DOT's* job descriptions, the ALJ's error in not inquiring about potential conflicts was harmless.").

### V.  Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that the Commissioner's decision is AFFIRMED IN PART and REVERSED IN PART.  The case is remanded for further proceedings consistent with this Order.

Dated: August   8  , 2011 in Denver, Colorado.

BY THE COURT:

    s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE